ELWOOD B. HUNTOON

*vs.*

SHERWOOD WILEY AND JOSEPH TEENEY.

Cumberland.   Opinion, November 27, 1946.

*Frank I. Cowan,*

*Caspar F. Cowan,* for plaintiff.

*William B. Mahoney,* for defendant.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FEL-
LOWS, JJ. AND MANSER, ACTIVE RETIRED JUSTICE.

FELLOWS, J.   This case, tried before a jury, comes to the
Law Court on defendant's exceptions to denial of motion for

a directed verdict, and on general motion for new trial. The exception taken to allowance of an amendment to plaintiff's declaration was expressly waived. The plaintiff discontinued as to defendant Teeney. The jury verdict was for the plaintiff in the sum of $1,875.

The main facts in the evidence appear to be, that two motor cars were in collision at Falmouth, on the main highway from Portland known as Route 1, on a dark night November 24, 1945. The highway was two lane concrete, and ran east and west. One of the cars, a Chevrolet that had been in the collision, was completely blocking the south half of the highway, the front of the car at the center of the road. The plaintiff, driving a tank truck toward Portland, then came to the scene. The plaintiff passed the Chevrolet car that was disabled, and stopped his truck 100 feet away. The plaintiff then went back with a flashlight to the disabled car to render any assistance needed. The plaintiff was in the highway, "about one foot on the road" near the left rear fender of the Chevrolet, and was assisting a lady who was on the running board of the Chevrolet. The defendant at that time was proceeding in a truck easterly from Portland, and on the same southerly side of the road. A witness, Pelletier, said he saw the defendant coming and stood in the road waving his hands to stop him. As the defendant passed the parked tank truck, the defendant says he dimmed his lights, saw too late the disabled Chevrolet blocking his path, swerved suddenly to the left to pass, and as a result the side of defendant's truck struck the plaintiff, and threw the plaintiff against the disabled car.

There was certainly sufficient evidence for the jury to find that the defendant was negligent; and the Court cannot say, under the circumstances here, that a person, trying to be "a good Samaritan," is negligent as a matter of law to be at the edge of a highway near a disabled car that blocks one half the way. These are jury questions. Only one half of the highway was blocked. The defendant had opportunity to pass. Was the

plaintiff in an apparent position of danger, and if so, how serious was the danger? Did the plaintiff, as an ordinarily careful and prudent person, have a right to assume, and did he assume, under the circumstances, that an approaching driver would see and appreciate the unusual, and would exercise proper care to observe extraordinary conditions of persons and objects, due to an accident; and, having opportunity to pass, that he would not run into a car standing at an angle across his path, or near enough to injure a person there assisting the unfortunate? The defendant did not directly run into the plaintiff. He did not run into the disabled car. It was a situation where a jury should determine what the exact circumstances were, and whether either the plaintiff or defendant, or both, were negligent. *Hill* v. *Finnemore*, 132 Me., 459, 464, 172 A., 826; *Rogers* v. *Forgione*, 126 Me., 356, 138 A., 553; *Esponette* v. *Wiseman*, 130 Me., 297, 155 A., 650; *Gerrish* v. *Ferris*, 138 Me., 213, 23 A., 2d, 891. The Court cannot say that the jury's verdict is manifestly wrong. *Eaton* v. *Marcelle*, 139 Me., 256, 29 A., 2d, 162.

In reference to damages, there is no yardstick to measure pain or to ascertain the worth of mental suffering. Only such things as actual loss of earnings, and expenses incurred in an effort to effect a cure, may be mathematical. The plaintiff was struck and violently thrown against the disabled car. The jury could find for hospital expense and medical care $219.86, and for loss of wages about $400. He "coughed blood" at the time of regaining consciousness, and testified to "burning sensations" in his chest at the time of trial. There were lacerations. He had difficulty in breathing. He was badly swollen for some period of time, possibly in part due to reactions from penicillin treatment. He also testified to much pain, much discomfort, and much mental distress. The verdict is large, but the examination of the record does not convince that it is "grossly excessive" as claimed by the defendant. *Hachey* v.

*Maillet,* 128 Me., 77, 145 A., 740; *Gregory* v. *Perry,* 126 Me., 99, 136 A., 354; *Vallely* v. *Scott,* 126 Me., 597, 598, 138 A., 311.

*Exceptions overruled.*
*Motion overruled.*